E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
International Narcotics, Money Laundering,
 and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0813
     Facsimile: (213) 894-1414
     E-mail:    daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>                   v.<br><br>NYISHA RAMSEY et al.,<br><br>              Defendants. | No. CR 2:22-00567-FWS-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>NYISHA RAMSEY |

     1.   This constitutes the plea agreement between NYISHA RAMSEY ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

                     DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count 1 of the

1  indictment in <u>United States v. NYISHA RAMSEY et al.</u>, CR No. 2:22-
2  00567-FWS-1, which charges defendant with conspiracy to commit wire
3  fraud affecting a financial institution and bank fraud in violation
4  of 18 U.S.C. § 1349.

5         b.   Not contest facts agreed to in this agreement.

6         c.   Abide by all agreements regarding sentencing contained
7  in this agreement.

8         d.   Appear for all court appearances, surrender as ordered
9  for service of sentence, obey all conditions of any bond, and obey
10 any other ongoing court order in this matter.

11        e.   Not commit any crime; however, offenses that would be
12 excluded for sentencing purposes under United States Sentencing
13 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
14 within the scope of this agreement.

15        f.   Be truthful at all times with the United States
16 Probation and Pretrial Services Office and the Court.

17        g.   Pay the applicable special assessment at or before the
18 time of sentencing unless defendant has demonstrated a lack of
19 ability to pay such assessments.

20        h.   Defendant agrees that any and all criminal debt
21 ordered by the Court will be due in full and immediately.  The
22 government is not precluded from pursuing, in excess of any payment
23 schedule set by the Court, any and all available remedies by which to
24 satisfy defendant's payment of the full financial obligation,
25 including referral to the Treasury Offset Program.

26        i.   Complete the Financial Disclosure Statement on a form
27 provided by the USAO and, within 30 days of defendant's entry of a
28 guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following: the $27,111 in U.S. currency and the prepaid/FSA refund debit cards found in her home on June 27, 2017 (collectively, the "Forfeitable Assets").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture

1  and the completing of any other legal documents required for the

2  transfer of title to the United States.

3       d.   Not to contest any administrative forfeiture

4  proceedings or civil judicial proceedings commenced against the

5  Forfeitable Assets.  If defendant submitted a claim and/or petition

6  for remission for all or part of the Forfeitable Assets on behalf of

7  himself or any other individual or entity, defendant shall and hereby

8  does withdraw any such claims or petitions, and further agrees to

9  waive any right he may have to seek remission or mitigation of the

10  forfeiture of the Forfeitable Assets.

11       e.   Not to assist any other individual in any effort

12  falsely to contest the forfeiture of the Forfeitable Assets.

13       f.   Not to claim that reasonable cause to seize the

14  Forfeitable Assets was lacking.

15       g.   To prevent the transfer, sale, destruction, or loss of

16  any and all assets described above to the extent defendant has the

17  ability to do so.

18       h.   To fill out and deliver to the USAO a completed

19  financial statement listing defendant's assets on a form provided by

20  the USAO.

21       i.   That forfeiture of Forfeitable Assets shall not be

22  counted toward satisfaction of any special assessment, fine,

23  restitution, costs, or other penalty the Court may impose.  However,

24  the parties further agree that, pursuant to the Asset Forfeiture

25  Policy Manual (2021), Chapter 14, Sec. II.B.2 and 28 C.F.R. Part 9.8,

26  upon a determination by the government that it can make the required

27  representations set forth therein, and if requested by defendant, the

28  government will submit a restoration request to the Money Laundering

4

1 │ and Asset Recovery Section of the Department of Justice, seeking
2 │ approval for any assets forfeited to be restored to the victims in
3 │ this case, which may, in turn, satisfy in full or part any
4 │ restitution order.  Defendant has acknowledged that the Attorney
5 │ General, or his designee, has the sole discretion to approve or deny
6 │ the restoration request.

7 │     4.   With respect to any criminal forfeiture ordered as a result
8 │ of this plea agreement, defendant waives: (1) the requirements of
9 │ Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice
10 │ of the forfeiture in the charging instrument, announcements of the
11 │ forfeiture sentencing, and incorporation of the forfeiture in the
12 │ judgment; (2) all constitutional and statutory challenges to the
13 │ forfeiture (including by direct appeal, habeas corpus or any other
14 │ means); and (3) all constitutional, legal, and equitable defenses to
15 │ the forfeiture of the Forfeitable Assets in any proceeding on any
16 │ grounds including, without limitation, that the forfeiture
17 │ constitutes an excessive fine or punishment.  Defendant acknowledges
18 │ that forfeiture of the Forfeitable Assets is part of the sentence
19 │ that may be imposed in this case and waives any failure by the Court
20 │ to advise defendant of this, pursuant to Federal Rule of Criminal
21 │ Procedure 11(b)(1)(J), at the time the Court accepts defendant's
22 │ guilty plea.

### THE USAO'S OBLIGATIONS

24 │     5.   The USAO agrees to:
25 │         a.   Not contest facts agreed to in this agreement.
26 │         b.   Abide by all agreements regarding sentencing contained
27 │ in this agreement.

1        c.   At the time of sentencing, provided that defendant

2  demonstrates an acceptance of responsibility for the offense up to

3  and including the time of sentencing, recommend a two-level reduction

4  in the applicable Sentencing Guidelines offense level, pursuant to

5  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

6  additional one-level reduction if available under that section.

7                   NATURE OF THE OFFENSE

8     6.   Defendant understands that for defendant to be guilty of

9  the crime charged in count 1, that is, conspiracy to commit wire

10  fraud affecting a financial institution and bank fraud, in violation

11  of Title 18, United States Code, Section 1349, the following must be

12  true: (1) beginning on an unknown date, but no later than in or

13  around January 2012, and continuing through at least until in or

14  around August 2017, there was an agreement between two or more

15  persons to commit wire fraud affecting a financial institution, in

16  violation of 18 U.S.C. § 1343, and bank fraud, in violation of 18

17  U.S.C. § 1344(2); and (2) defendant became a member of the conspiracy

18  knowing of at least one of its objects and intending to help

19  accomplish it.

20     To establish a substantive violation of wire fraud affecting a

21  financial institution in violation of 18 U.S.C. § 1343, the following

22  must be true: (1) defendant knowingly participated in or devised a

23  scheme to defraud, or a scheme or plan for obtaining money or

24  property by means of false or fraudulent pretenses, representations,

25  or promises; (2) the statements made as part of the scheme were

26  material; that is, they had a natural tendency to influence, or were

27  capable of influencing, a person to part with money or property; (3)

28  defendant acted with the intent to defraud, that is, the intent to

1  deceive and cheat; and (4) defendant used, or caused to be used, an

2  interstate wire communication to carry out or attempt to carry out an

3  essential part of the scheme.

4      To establish a substantive violation of bank fraud in violation

5  of 18 U.S.C. § 1344(2), the following must be true: (1) defendant

6  knowingly carried out a scheme or plan to obtain money or property

7  from BankMobile by making false statements or promises; (2) defendant

8  knew that the statements or promises were false; (3) the statements

9  or promises were material, that is, they had a natural tendency to

10  influence, or were capable of influencing, a financial institution to

11  part with money or property; (4) defendant acted with the intent to

12  defraud; and (5) BankMobile was federally insured.

13                    PENALTIES AND RESTITUTION

14      7.   Defendant understands that the statutory maximum sentence

15  that the Court can impose for a violation of Title 18, United States

16  Code, Section 1349, conspiracy to commit wire fraud affecting a

17  financial institution in violation of Title 18, United States Code,

18  Section 1343 and bank fraud in violation of Title 18, United States

19  Code, Section 1344, is: 30 years' imprisonment; a five-year period of

20  supervised release; a fine of $1,000,000 or twice the gross gain or

21  gross loss resulting from the offense, whichever is greatest; and a

22  mandatory special assessment of $ 100.

23      8.   Defendant understands that defendant will be required to

24  pay full restitution to the victims of the offense to which defendant

25  is pleading guilty.  Defendant agrees that, in return for the USAO's

26  compliance with its obligations under this agreement, the Court may

27  order restitution to persons other than the victims of the offense to

28  which defendant is pleading guilty and in amounts greater than those

                                7

1   alleged in the count to which defendant is pleading guilty.   In
2   particular, defendant agrees that the Court may order restitution to
3   any victim of any of the following for any losses suffered by that
4   victim as a result: (a) any relevant conduct, as defined in U.S.S.G.
5   § 1B1.3, in connection with the offense to which defendant is
6   pleading guilty.

7       9.   Defendant understands that supervised release is a period
8   of time following imprisonment during which defendant will be subject
9   to various restrictions and requirements.   Defendant understands that
10  if defendant violates one or more of the conditions of any supervised
11  release imposed, defendant may be returned to prison for all or part
12  of the term of supervised release authorized by statute for the
13  offense that resulted in the term of supervised release, which could
14  result in defendant serving a total term of imprisonment greater than
15  the statutory maximum stated above.

16      10.   Defendant understands that, by pleading guilty, defendant
17  may be giving up valuable government benefits and valuable civic
18  rights, such as the right to vote, the right to possess a firearm,
19  the right to hold office, and the right to serve on a jury.
20  Defendant understands that she is pleading guilty to a felony and
21  that it is a federal crime for a convicted felon to possess a firearm
22  or ammunition.   Defendant understands that the conviction in this
23  case may also subject defendant to various other collateral
24  consequences, including but not limited to revocation of probation,
25  parole, or supervised release in another case and suspension or
26  revocation of a professional license.   Defendant understands that
27  unanticipated collateral consequences will not serve as grounds to
28  withdraw defendant's guilty plea.

11.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.   Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.   Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

12.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.   Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

1      Beginning on a date unknown, but no later than in or about

2  January 2012, and continuing through at least until in or about

3  August 2017, in Los Angeles and Orange Counties, within the Central

4  District of California, and elsewhere, defendant and her co-

5  defendants DIONNE RAMSEY and SHARYN BARNEY, knowingly and with intent

6  to defraud, conspired with others known and unknown to commit wire

7  fraud affecting a financial institution, in violation of 18 U.S.C.

8  § 1343, and bank fraud, in violation of 18 U.S.C. § 1344(2).

9      In furtherance of the conspiracy, and to accomplish its objects,

10  defendant and her co-conspirators obtained personal identifying

11  information ("PII"), including names and social security numbers, of

12  other individuals to pose as college students (hereinafter referred

13  as "straw students").  Defendant and her co-conspirators would then

14  use the straw students' PII to apply for Title IV Federal Student

15  Assistance ("FSA") and college enrollment, including at Fullerton

16  College in the Central District of California.  During the

17  conspiracy, the United States Department of Education ("DOE")

18  administered the FSA program in the form of loans through the Direct

19  Loan Program and grants through the Pell Grant Program.

20      Defendant and her co-conspirators used the identities and PII of

21  approximately 67 straw students to execute their scheme.

22  Specifically, defendant and her co-conspirators fraudulently caused

23  FSA funds to be disbursed through the following scheme:

24          a.   Defendant and her co-conspirators obtained PII,

25  including names and social security numbers of the "straw students".

26  For example, on August 12, 2016, defendant sent a text message

27  containing straw student P.B.'s social security number to defendant

28  D. RAMSEY;

1          b.   Defendant and her co-conspirators fraudulently
2    completed and/or conspired to complete the FAFSA application and
3    enrollment process with Fullerton College and at least ten other
4    colleges using the straw students' PII;

5          c.   Defendant and her co-conspirators fraudulently
6    completed and/or conspired to complete and electronically sign master
7    promissory notes ("MPNs"), or legal documents in which they promised
8    to repay loans and any accrued interest and fees to the DOE using the
9    straw students' PII;

10         d.   Defendant and her co-conspirators fraudulently created
11   accounts and/or conspired to create accounts – including the creation
12   of an account number, i.e., a means of identification – with
13   BankMobile, an FDIC-insured financial institution at the time of the
14   conspiracy, using the straw students' PII;

15         e.   Defendant and her co-conspirators then accessed the
16   BankMobile accounts created in the names of the straw students and
17   transferred the student-loan funds to their own personal bank
18   accounts, including the account of defendant BARNEY, who charged for
19   and allowed her address and bank account to be used and associated
20   with the straw students' applications and student-loan funds;

21         f.   During the conspiracy period, for these types of FSA
22   aid distributions, the colleges would send the student applicant a
23   portion of the FSA aid that was not designated to pay tuition and
24   fees from its bank account to BankMobile.  BankMobile then
25   transferred the funds to a BankMobile checking account controlled by
26   the student, transferred the funds directly to a student's personal
27   bank account, and/or mailed inactive debit cards preloaded with the
28   funds to students using the United States Postal Service;

g.   By submitting the fraudulent FAFSA applications and MPNs, defendant and her co-conspirators caused the United States Department of Treasury to transfer funds to the bank accounts associated with the colleges, including the Bank of America account for Fullerton College;

h.   By submitting the fraudulent FAFSA applications and MPNs, defendant and her co-conspirators caused the banks associated with the colleges to transfer funds to BankMobile and other FDIC-insured banking platforms;

i.   By submitting the fraudulent FAFSA applications and MPNs, and making fraudulent representations to BankMobile and similar banking platforms, defendant and her co-conspirators caused BankMobile to transfer funds to bank accounts that defendant and her co-conspirators had access to and/or controlled;

j.   By submitting the fraudulent FAFSA applications and MPNs, and making fraudulent representations to BankMobile and similar banking platforms, defendant and her co-conspirators caused BankMobile to mail prepaid debit cards to addresses that defendant and her co-conspirators had access to and/or controlled; and

k.   Defendant and her co-conspirators would not use the funds for permitted educational costs.  Instead, defendant and her co-conspirators would use the money for their own personal expenses.

As a result of the fraudulent scheme, defendant and her co-conspirators fraudulently caused the United States Treasury to award approximately $1,468,491 in FSA funds on behalf of the straw students.

WIRE FRAUD

Through their fraudulent scheme, defendant and her co-conspirators obtained money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, affecting a financial institution. Specifically, defendant agrees that it was within the foreseeable scope of the above-described scheme that her co-conspirators transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

a.    On July 27, 2015, a FAFSA submission for straw student S.R. from Lancaster, California, within the Central District of California, to a DOE server in Plano, Texas;

b.    On December 27, 2015, a FAFSA submission for straw student J.A. from Lancaster, California, within the Central District of California, to a DOE server in Plano, Texas; and

c.    On July 21, 2016, a FAFSA submission for straw student B.P. from Lancaster, California, within the Central District of California, to a DOE server in Plano, Texas;

d.    On July 19, 2016, a FAFSA submission for straw student F.I. from Lancaster, California, within the Central District of California, to a DOE server in Plano, Texas.

BANK FRAUD

Through their fraudulent scheme, defendant and her co-conspirators also obtained moneys, funds, credits, assets, and other property owned by and in the custody and control of BankMobile, a bank, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. Specifically, defendant agrees that it was within the foreseeable

scope of the above-described scheme that her co-conspirators committed an act which constituted an execution of the fraudulent scheme, namely, the use of BankMobile to request the transfer of $4,700 in the name of straw student G.J. to defendant BARNEY's Bank of America account on or about November 9, 2016.

Defendant further admits that the $27,111 in U.S. currency and the prepaid/FSA refund debit cards found in her home on June 27, 2017 were obtained through the above-described scheme.

SENTENCING FACTORS

13.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

14.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Amount More Than $550,000 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |

1  Defendant and the USAO reserve the right to argue that additional

2  specific offense characteristics, adjustments, and departures under

3  the Sentencing Guidelines are appropriate.   Defendant understands

4  that there is no agreement as to defendant's criminal history or

5  criminal history category.

6      15.   Defendant and the USAO reserve the right to argue for a

7  sentence outside the sentencing range established by the Sentencing

8  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

9  (a)(2), (a)(3), (a)(6), and (a)(7).

10                  WAIVER OF CONSTITUTIONAL RIGHTS

11     16.   Defendant understands that by pleading guilty, defendant

12  gives up the following rights:

13          a.   The right to persist in a plea of not guilty.

14          b.   The right to a speedy and public trial by jury.

15          c.   The right to be represented by counsel -- and if

16  necessary have the Court appoint counsel -- at trial.   Defendant

17  understands, however, that, defendant retains the right to be

18  represented by counsel -- and if necessary have the Court appoint

19  counsel -- at every other stage of the proceeding.

20          d.   The right to be presumed innocent and to have the

21  burden of proof placed on the government to prove defendant guilty

22  beyond a reasonable doubt.

23          e.   The right to confront and cross-examine witnesses

24  against defendant.

25          f.   The right to testify and to present evidence in

26  opposition to the charges, including the right to compel the

27  attendance of witnesses to testify.

28

1          g.    The right not to be compelled to testify, and, if

2    defendant chose not to testify or present evidence, to have that

3    choice not be used against defendant.

4          h.    Any and all rights to pursue any affirmative defenses,

5    Fourth Amendment or Fifth Amendment claims, and other pretrial

6    motions that have been filed or could be filed.

7                     WAIVER OF APPEAL OF CONVICTION

8          17.  Defendant understands that, with the exception of an appeal

9    based on a claim that defendant's guilty plea was involuntary, by

10   pleading guilty defendant is waiving and giving up any right to

11   appeal defendant's conviction on the offense to which defendant is

12   pleading guilty.  Defendant understands that this waiver includes,

13   but is not limited to, arguments that the statute to which defendant

14   is pleading guilty is unconstitutional, and any and all claims that

15   the statement of facts provided herein is insufficient to support

16   defendant's plea of guilty.

17   LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND WAIVER OF COLLATERAL

18                                ATTACK

19         18.  Defendant agrees that, provided the Court imposes a total

20   term of imprisonment within or below the range corresponding to an

21   offense level of 20, defendant gives up the right to appeal all of

22   the following: (a) the procedures and calculations used to determine

23   and impose any portion of the sentence; (b) the term of imprisonment

24   imposed by the Court; (c) the fine imposed by the Court, provided it

25   is within the statutory maximum; (d) to the extent permitted by law,

26   the constitutionality or legality of defendant's sentence, provided

27   it is within the statutory maximum; (e) the amount and terms of any

28   restitution order, provided it requires payment of no more than

$ 1,468,491; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7)..

19.    Defendant also gives up any right to bring a postconviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

20.    The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 20, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $ 1,468,491.

RESULT OF WITHDRAWAL OF GUILTY PLEA

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

24. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 14 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

1   fulfill all defendant's obligations under this agreement.  Defendant

2   understands that no one -- not the prosecutor, defendant's attorney,

3   or the Court -- can make a binding prediction or promise regarding

4   the sentence defendant will receive, except that it will be within

5   the statutory maximum.

6   <u>NO ADDITIONAL AGREEMENTS</u>

7      27.  Defendant understands that, except as set forth herein,

8   there are no promises, understandings, or agreements between the USAO

9   and defendant or defendant's attorney, and that no additional

10   promise, understanding, or agreement may be entered into unless in a

11   writing signed by all parties or on the record in court.

12   //

1     PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2         28.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    E. MARTIN ESTRADA
     United States Attorney

9                                              6/17/2024

10   _____          _____
     DANIEL H. WEINER                     Date
11   Assistant United States Attorney

12                                              6-17-24
     _____          _____
13   NYISHA RAMSEY                        Date
     Defendant

14                                              6/17/24
     _____          _____
15   SAM CROSS                            Date
     Attorney for Defendant NYISHA
16   RAMSEY

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          6-17-24
NYISHA RAMSEY                              Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am NYISHA RAMSEY's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          6/17/24
SAM CROSS                          Date
Attorney for Defendant NYISHA
RAMSEY